ALEXANDER *v.* BEEKMAN LUMBER COMPANY.

Opinion delivered March 10, 1906.

1. APPEAL—QUESTION RAISED BY RECORD.—It is immaterial that proper exceptions were not saved to instructions given by the court in construing a certain contract if the same questions were raised on the record by the ruling of the court in upholding the sufficiency of the complaint. (Page 171.)

2. DEED—CONVEYANCE OF SAWMILL—EFFECT.—By a deed conveying timber, a sawmill and all the machinery connected therewith, and stipulating that "nothing else is sold, and that the party of the first part retains the ownership of the land and all other property thereon," a shed which covers the sawmill does not pass. (Page 172.)

Appeal from Greene Circuit Court; *Allen N. Hughes,* Judge; reversed.

Alexander, Amberg & Company, a partnership, as parties of the first part, made a written contract with Smeltzly and Stametts, parties of the second part, whereby they sold to the latter all the mill timber on certain described lands. The contract provided that "the party of the first part hereby sells to the party of the second part their sawmill and all the machinery connected therewith located on said land near St. Francis River and the Paragould & Southwestern Railroad."

After providing for the mode of payment and giving the purchasers six years to remove the timber, the contract provided further that "nothing is sold to the party of the second part but timber, sawmill and machinery mentioned herein, and the party of the first part retains the ownership of the land and all other property thereon. * * * It is expressly agreed and understood that if the party of the second part does not pay the notes given for said sawmill and timber promptly when they fall due, then all of said notes are to become due and payable at once, and the said sawmill and timber may be sold to pay whatever may be unpaid of the purchase price by the party of the first part. * * * It is further agreed by the party of the first part to give the party of the second part the use of all the houses on said property, except one occupied by S. Virgilio."

The Beekman Lumber Company, a corporation, succeeded

to the rights of Smeltzly & Stametts, and R. L. Alexander to those of Alexander, Amberg & Company.

The Beekman Lumber Company, while in possession of the sawmill under the above contract, attempted to sell the mill shed in which the sawmill was located, whereupon Alexander served notice upon the Beekman Lumber Company and the prospective buyer that he would sue them for damages if they removed or attempted to remove the mill shed, and thereby prevented the consummation of the sale. The lumber company then brought this suit to recover damages for the unlawful interference with its rights.

Under the instructions of the court a verdict was found in favor of the plaintiff, and judgment was rendered accordingly:

Defendant filed a motion for new trial, relying upon the following grounds:

"First, the verdict of the jury is contrary to the evidence.

"Second, the verdict of the jury is contrary to law.

"Third, the verdict of the jury is contrary to the law and evidence.

"Fourth, the declarations of law given by the court, Nos. 1, 2, 3, 4, 5 and 6, are contrary to law."

The motion was overruled, and defendant has appealed.

*Johnson & Huddleston* and *W. S. Luna,* for appellant.

The court erred in holding that title to the mill shed passed to appellee. For definition of the word "mill," see 71 Wis. 33. Sawmill: a mill used for sawing, especially used for sawing timber or lumber.—Web. Unabridged Dict. A mill for sawing timber.—Univ. Dict. Eng. Lang. Vol. 4, Ed. 1899. See 44 N. H. 386.

*J. D. Block,* for appellee.

Appellant's objections to the court's declarations of law are general, and fail to set out the specific grounds of objection. This court will not consider them if any of the declarations are correct. 60 Ark. 250; 59 Ark. 312; *Ib.* 370. A mill is defined as "the building, with its machinery, where grinding or some process is carried on." 71 Wis. 33, second definition. "Mill, mill-dam, mill-privilege, mill-site, and like expressions, are construed to include land, buildings and machinery, or other fixtures

necessary or useful to attain the object proposed in the erection." Anderson's Law Dict. (1891 Ed.)   See also Webster's Dict.; Bouvier's Law Dict.

*Johnson & Huddleston* and *W. S. Luna,* for appellant, in reply.

The declarations of law by the lower court being based upon the construction of the language and terms of a written contract set out in the bill of exceptions, and which was the only evidence considered in construing the contract, it was not necessary to except at all in order to secure a review by this court.   125 Mo. 418; 28 S. W. 656; 101 Ill. 446; 48 Kan. 428; 20 U. S. 530; 15 S. W. 987; 5 Ark. 700.   See also 65 Ark. 525; 39 Ark. 41.

WOOD, J.   The bill of exceptions shows that the court of its own motion gave the following instructions and declarations of law, towit:

" '1.   The words of description of the property sold in the contract included the mill shed.

" '2.   If the shed was a fixture real when built, it has by agreement of the parties ceased to be such.

" '3.   The form of the writing is sufficient.

" '4.   The plaintiff was the owner of the shed when it was torn down.'

"To which instructions and declarations of law the defendant at the time excepted, and asked that his exceptions be noted of record, which was accordingly done."

The exception to the instructions was in gross.   *Atkins* v. *Swoope,* 38 Ark. 528.

But, inasmuch as the contract itself was the basis of the complaint, and as the question of law in the case depends upon the sufficiency of the complaint, we are of the opinion that if there was any error in the construction of the contract, such error appears upon the face of the record.

So the only question here is, do Alexander, Amberg & Company (represented here by appellant) own the sawmill shed involved in this litigation?

Reverting to the contract, its language is: "The party of the first part hereby sells to the party of the second part their sawmill and all the machinery connected therewith located on said

land near St. Francis River and the Paragould & Southwestern Railroad. * * * Nothing is sold to the party of the second part but timber, sawmill and machinery mentioned herein, and the party of the first part retains the ownership of the land and all other property thereon. It is expressly agreed and understood that if the party of the second part does, not pay the notes given for said sawmill and timber promptly when they fall due, then all of said notes are to become due and payable at once, and the said sawmill and timber may be sold to pay whatever may be unpaid of the purchase price by the party of the first part. In testimony whereof we have signed our names hereto this the 13th day of July, 1895. It is further agreed by the party of the first part to give the party of the second part the use of all the houses on said property, except one occupied by S. Virgilio."

We do not agree with the learned trial court that the word "sawmill," as used in the contract, includes the mill shed that covers the sawmill. A mill is not a shed, and a shed is not a mill. They are not synonymous nor convertible terms, nor does one include the other. A sawmill is a sawmill, whether it has a shed over it or not. In, the factory where it is made or the store where it is sold, it is still a sawmill, and the sheds covering the sawmill in such cases are not parts of the sawmill, but parts of the real estate to which they are attached.

What is a sawmill? A "saw" is "a tool for cutting," and a "mill" is "a machine for grinding." March's Dictionary.

The standard lexicographers all give the first meaning of mill as a machine or device for grinding, cutting, etc. The mill is the machine constructed for various purposes of grinding, cutting, etc. The particular purpose for which it is designed is usually designated by a prefix indicating the purpose, as "sawmill," "gristmill," etc. The term "mill" necessarily carries with it the idea of a machine, device, tool, but it does not necessarily carry with it the idea of a shed or house. True, the term "mill" is frequently used to designate, not only the machine used for grinding, cutting, etc., but also, in a general and comprehensive sense, the house or shed where such machinery may be in operation, if there be a house or shed where the mill is located. Many lexicographers give, this as the second meaning of the word. See Worcester, Century and Webster's Dictiona-

ries. So not much aid can be derived from the definition of the word by the lexicographers, except when it is used in its strictly technical sense.

If the makers of the contract had used the word in the broad sense of designating the plant as a whole, including house, machinery and all appointments in connection with such manufacturing establishment, they would hardly have added the words, "and machinery," "and machinery thereto attached," after the word "sawmill," for it would have been unnecessary. The word "mill" would have been sufficient.

Now, the parties to the contract were by their contract converting fixtures into personalty, if the contention of appellee be correct. They were changing the legal and natural status of the property, and the intention to do this should be made most manifest before the instrument could be construed to have such effect. We think it clear from the words used, and from the other reservations made by the owners of the real estate, that they did not intend to sell the mill shed with the sawmill and machinery. This shed would have to be torn down and detached from the soil in order to be removed, and it is not probable, we think, that the parties had this in contemplation. Only the "sawmill and machinery" were sold. "The land and all other property thereon" were reserved. It follows that the mill shed or house was not sold, and the court erred in rendering judgment in favor of appellee.

The judgment is reversed, and the cause is remanded for new trial.